ROBERT J. MOBLEY *v.* STATE OF ARKANSAS

5632                                      473 S.W. 2d 176

Opinion delivered November 22, 1971

*R. W. Laster,* for appellant.

*Ray Thornton,* Attorney General; *Milton Lueken,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant was convicted of obtaining property from Cash Wholesale Company under false pretenses on December 1, 1969. He contends that the circuit court committed reversible error when

it refused to permit Otis Green to testify on behalf of appellant. We agree.

The evidence on behalf of the state showed that a man who represented himself to be James Higgins appeared at the Cash Wholesale Company on December 1, 1969, at approximately 11:00 a.m., and placed a substantial order as the purported representative of Salem Furniture Company. As a part of the transaction, 30 watches were delivered to Higgins, but the salesman told him that the balance of the order could not be picked up until 2:30 p.m. The real purpose of the delay was to allow time for a credit investigation. Investigation disclosed that the address given for Salem Furniture Company in Little Rock was a false one and no such company could be located in Little Rock. The salesman said that appellant Mobley was the man who represented himself as Higgins but that his hair was sandy brown on that date, unlike its color on the day of trial. Another salesman corroborated this identification, but said that on December 1, 1969, the man who called himself Higgins had sandy blond hair and did not wear glasses.

After the state completed its evidence in chief and rested, the court was recessed for lunch. When the court reconvened, appellant's attorney called Otis Green to the witness stand, and the circuit judge observed that he had been in the courtroom all morning. Appellant's attorney replied that he had caused a subpoena to be issued for this witness during the noon recess. When the witness admitted that he had been in the courtroom all morning, and had heard all the testimony in the case, the judge ruled that he could not testify.

By proffer, it was shown that Green would state that he saw appellant before noon on December 1, 1969, and again at 2:30 p.m. on the same date, that he was the prosecuting witness against Mobley on a charge relating to the taking of money by Mobley on that day, that he had known Mobley for four years and that the appellant's hair was neither blond nor red on that date, and also would state that he had been subpoenaed during the lunch recess.

Another witness testified that he had known appellant 25 years, and knew that his hair was neither blond nor red on December 1, 1969. Mobley testified that he never went without glasses and had never dyed his hair and that Green knew that his hair was not dyed on December 1, 1969.

While appellant contends the invocation of the rule for sequestration of witnesses is not disclosed by the record, it does appear that the circuit judge had earlier referred on two occasions to the state's witnesses being "under the rule." It usually lies within sound judicial discretion whether a witness, who has been in the courtroom in spite of a rule excluding witnesses therefrom, should be permitted to testify. Appellant's attorney stated that he was not aware of Green's presence in the courtroom or his identity until the noon recess. His statement went unchallenged.

The issue in this case turned upon the identity of the perpetrator of the fraud and appellant's claim of alibi. In virtually identical circumstances, we held that refusal to permit such a witness to testify was an abuse of discretion, even though the testimony would have only been corroborative of that of another witness. *Harris* v. *State,* 171 Ark. 658, 285 S. W. 367. Appellant's argument on this point is even stronger than was that of Harris, because Green could hardly be expected to be favorably disposed toward appellant. We must reverse this judgment for the abuse of discretion in not permitting Green to testify.

Appellant's request that he be permitted to withdraw certain documents purportedly signed by him for the purpose of making and procuring comparisons with his own handwriting was not made until after trial for the purpose of his motion for new trial. Although there was no abuse of discretion in the denial of this request made at that time, appellant made the denial a ground for his motion for new trial and advanced the point on appeal. Obviously, this point will arise on retrial, so we must consider it.

This particular question has never been presented to this court. We have no statute governing discovery in criminal cases, and we have held the civil discovery act inapplicable. *Edens* v. *State,* 235 Ark. 996, 363 S. W. 2d 923. But we recognized long ago that there are circumstances in which an accused may be entitled to examine and inspect documentary evidence in possession or under the control of the prosecution, when it is admissible in evidence. *Jones* v. *State,* 213 Ark. 863, 213 S. W. 2d 974. It is rather generally recognized that a trial court has discretionary power, even in the absence of statute, to permit inspection of relevant, material, admissible evidence in the prosecutor's possession and control, but not his work product, whenever necessary for a fair trial or in the interest of justice. 7 A. L. R. 3d 8, 19, 36, 57.

In considering this problem in *People* v. *Supreme Court,* 245 N. Y. 24, 156 N. E. 84, 52 A. L. R. 200 (1927) the revered Justice Cardozo, after reviewing *Rex* v. *Holland,* 4 Durn. and E 619, decided in 1792—a case which he called the point of departure as the subject relates to criminal cases—and after emphasizing the fact that examination of the report in question was denied in *Holland,* made these pertinent remarks:

> Later cases exhibit a more conciliatory tendency where the document is one that may be received as an exhibit. Discovery will be ordered if the exhibit is the basis of the charge, as, *e. g.,* where the indictment is for sending a threatening letter. *Rex* v. *Harrie,* 6 Car. & P. 105. Cf. *People* v. *Bellows,* 1 How. Pr. N. S. 149. There is some authority for the view that it will be ordered in other cases where the thing to be inspected is admissible in evidence and a failure of justice may result from its suppression. Thus, in *Reg.* v. *Spry,* 3 Cox, C. C. 221, an inspection of the contents of the stomach was permitted in a prosecution for homicide. In *People* v. *Gerold,* 265 Ill. 448, 107 N. E. 165, Ann. Cas. 1916A, 636, a county treasurer charged with defalcation was held to have the right to inspect official books and documents. In *Com.* v. *Jordan,* 207 Mass. 259, 93 N. E. 809, a prosecution for murder, there was recogni-

tion of the power to permit an inspection of portions of the body taken at the time of the autopsy by the medical examiner and also weapons and other exhibits in the possession of the public prosecutor, though the court refused the order in the exercise of discretion. Other cases point the same way with more or less distinctness. See, *e. g., Newton v. State,* 21 Fla. 53; *Daly v. Dimock,* 55 Conn. 579, 12 Atl. 405; *State v. Howland,* 100 Kan. 181, 163 Pac. 1071. The power frequently asserted to compel the return of property illegally impounded is based upon the assumption of a supervisory jurisdiction over the acts of public prosecutors. *Weeks v. United States,* 232 U. S. 383, 398, 58 L. Ed. 652, L. R. A. 1915B, 834, 34 Sup. Ct. Rep. 341, Ann. Cas. 1915C, 1177; *People v. Chiagles,* 237 N. Y. 193, 199, 32 A. L. R. 676, 142 N. E. 583. Cf. Kenny, Outlines of Criminal Law, 477, citing *Reg. v. Puddick,* 4 Fost. & F. 497. There may be something of kinship here to the power to compel inspection in furtherance of justice. Argument earnestly upholding the latter jurisdiction, though conceding much authority against it, will be found in Mr. Wigmore's Treatise. 3 Wigmore, Ev. §§ 1859g, 1863. Cf. 2 Bishop, New Crim. Proc. 2d ed. § 959d. There are pronouncements, however, to the contrary in the works of learned commentators. 2 Russell, Crimes, 1985, 2096, 2098; 9 Laws of England (Halsbury) p. 387, § 152; cf. *State v. Howard,* 191 Iowa, 728, 183 N. W. 482.

Later the inherent power of the courts to permit inspection and examination by a defendant in criminal cases of documents or other admissible evidence in the furtherance of justice was recognized in the New York courts. See, *e. g., People v. Christiano,* 53 Misc. 2d 433, 278 N. Y. S. 2d 696 (1967); *People v. Nassar,* 60 Misc. 2d 27, 301 N. Y. S. 2d 678 (1969); *People v. Calandrillo,* 215 N. Y. S. 2d 361 (1961). This inherent power has also been recognized in other states. See, *e. g., State v. Wade,* 83 S. D. 337, 159 N. W. 2d 396 (1968); *State v. Gilman,* 63 Wash. 2d 7, 385 P. 2d 369 (1963).[1] Such cases recog-

---

[1]Our holding in *Jones v. State,* supra, could only have been based upon this inherent power.

nize that the granting of such a motion by a defendant is not a matter of right but that it lies within the sound judicial discretion of the trial court, the exercise of which will not be disturbed on appeal unless there is an abuse. They also recognize that the right is not unlimited. See, *e. g., People* v. *Serour,* 63 Mis. 2d 852, 313 N. Y. S. 2d 621 (1970). Inspection and examination should be granted whenever injustice might result if they are denied. See *People* v. *Nassar,* supra. It is particularly appropriate where examination by experts is needed. *People v. Christiano,* supra; *State* v. *Gilman,* supra. Appropriate considerations in the exercise of the court's discretion are stated in some of the cases cited above. In *State* v. *Gilman,* supra, the court said:

> Judicial discretion to grant or to deny the examination of the state's files in a criminal case is compounded of many things, among which are: timeliness of the application; time and opportunity of the defendant to prepare for trial; reactions and attitudes of witnesses if interviewed before trial; indications of prior inconsistencies in the testimony; surprise at the trial, which reasonable diligence in preparation would not have avoided; reasonable opportunity for examination and experiment by experts consistent with the preservation of the evidence; a clear showing of real danger to and concern for the personal safety of witnesses; needless damage to reputation; financial inability of the defendant to obtain technical and investigative aid; and any other considerations, the denial of which shows an unfair deprivation or the granting of which supports the ideal of substantive due process—all, of course, to be considered in keeping with the responsibility of the trial judge to control the pace of the trial and keep it moving at reasonable speed to its conclusion.

In *State* v. *Wade,* supra, these statements are appropriate:

> A general hunting or fishing license should ordinarily not be granted and the time, place, and manner of making the inspection permitted or discovery

allowed should be specified. It should ordinarily be confined to relevant, tangible or written evidential matters and should be denied whenever (1) there is danger or likelihood of witnesses being coerced, intimidated, or bribed; (2) the State may be unduly hampered in its investigation, preparation, and trial of defendant's case or of other related criminal cases; or (3) other evil or danger to the public interest may result from inspection or disclosure.

We think that these authorities state proper guidelines.

Inasmuch as the documents involved are a part of the alleged false pretenses and the identity of the perpetrator of the fraud in the principal issue, inspection and examination of the exhibits introduced in the first trial (and any other such exhibits under the control of the prosecution) by a handwriting expert obtained by appellant should be permitted, under whatever restrictions may be necessary to preserve their integrity.

The judgment is reversed and the cause remanded for a new trial.