Bobby J. NORRIS *v.* STATE of Arkansas

CR 75-199                                        536 S.W. 2d 298

Opinion delivered May 17, 1976

*Robert L. Shaw,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Gary Isbell,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. Bobby J. Norris was convicted at a jury trial in the Polk County Circuit Court for the crime of delivering a controlled substance, marijuana, and was sentenced to the Arkansas Department of Correction for a period of ten years and was fined $4,000.

On appeal to this court he has designated the following points on which he relies for reversal and we shall discuss the points in the order designated:

### I

The court erred in allowing the consideration of evidence which was improperly obtained.

This assignment pertains to the introduction into evidence of two marked $20 bills and a marked $10 bill and requires some discussion of the background facts as gathered from the testimony.

One Michael Pharr, who had served a sentence under the Controlled Substances Act and who was a longtime acquaintance of appellant Norris, became an informer in connection with the drug traffic in Polk County. According to his testimony he had previously purchased controlled substances, including marijuana, from Norris and on January 3

Norris advised him he had one-half pound of marijuana he would sell for $75. He said Norris later advised that he only had about 15 ounces of marijuana which he would sell for $50. He said he advised state Trooper Combs of the offer and arrangements were made for him to make the purchase under surveillance of the police officers. He said Officer Combs and Sheriff Hadaway then furnished him with $50 in marked money with which to make the purchase and that the officers explained the procedure he was to follow in indicating to them when the purchase was completed. He said he then went to Norris's house with the marked money which consisted of two $20 and one $10 bill; that Norris came out in his yard and after talking a few minutes, they walked to Norris's pickup truck where he handed Norris the marked money and Norris handed him a Buglar tobacco can containing the marijuana which he obtained from his pickup truck. He said he knew the police officers were watching the transaction and after he made the purchase he crossed the street and shrugged his shoulders as a signal by prior arrangement indicating that he had made the purchase.

Mr. Pharr said he looked back as he walked down the street and saw Norris walking toward his doorstep as the officers approached him, but he did not see whether Norris entered his house or not. He said by prearrangement he took the marijuana to Ray's Market where he delivered it to Rodney Combs, one of the police officers who came to Ray's Market to pick him up. He said he received no money from the officers for his services but that he made the purchase at their request for "personal reasons."

State Trooper Rodney Combs testified that he participated in the arrest of Norris. He said the money furnished to Mr. Pharr with which to purchase the marijuana was two $20 bills and a $10 bill marked with the sheriff's initials in ultraviolet pencil marking not visible to the naked eye, but which would show up under ultraviolet light. He said that after arranging with Mr. Pharr to make the purchase, he and the sheriff stationed themselves at a point near the Norris residence and that he observed the entire transaction through binoculars. He said he saw Mr. Norris and Pharr walk from Norris's porch to Norris's pickup truck parked in the yard

and saw Norris hand the tobacco can containing the marijuana to Pharr and saw Pharr hand the money to Norris. He said that after this transaction Mr. Pharr crossed the street and shrugged his shoulders as per prearranged signal and that Norris walked back upon his porch and stood there for a moment. He said other police units were stationed in the area so that the transaction could be observed from different directions, and that by prearranged radio signal they went to the Norris residence after the transaction was completed. He said that as they appraoched the Norris residence, Mr. Norris stepped off the north side of the porch into some shrubbery. He said Norris was not arrested at that point but was informed by the sheriff that he had a search warrant for the house. He said that while in Norris's bedroom they examined the money he had in his possession and they did not find the marked money. He said he then went back outside to the north side of the porch where he had seen Norris step off into the shrubbery and there he found the wadded up bills which proved to be the two $20 bills and one $10 bill originally furnished to Mr. Pharr.

Sheriff Hadaway corroborated the testimony of Trooper Combs except he said he did not have binoculars and could not determine exactly what objects were exchanged between Pharr and Norris. He said he saw Norris walk back up onto his porch after the transaction but was unable to determine from his own point of observation whether Norris went into the house. He said he then gave the radio signal to the other officers and that he went to the front door of Norris's house. He said Norris's mother answered the door and upon his inquiry for Norris, told him he was not there, indicating he was not inside the house. He said about that time Mr. Norris stepped out of some shrubbery up onto the porch behind him.

On voir dire examination the sheriff testified he had informed Norris he was under arrest for possession of controlled substances before he searched his person in the bedroom, and that he had formally arrested Norris before the marked money was subsequently found in the yard.

The sheriff had obtained a search warrant for the search of the appellant's house and apparently had obtained from

inside the house other items the state proposed to offer in evidence. The record, as abstracted, is not perfectly clear on the point but apparently the items from inside the house were found during a separate search subsequent to finding the marked money in the shrubbery at the side of the porch. At the in-chambers hearing prior to trial on motion to suppress evidence obtained under the search warrant the record, as abstracted, appears as follows:

> THE COURT: Gentlemen, since we are in chambers I am confident the defense is concerned that no evidence should be presented on this charge concerning the subsequent search of the defendant's premises and the substances found as a result of the search.

> MR. BOYD TACKETT, SR.: Right.

> THE COURT: Of course, that can't be used, gentlemen, and the state is admonished not to mention it. I wish you would go into the witness room and tell the state's witnesses not to mention the subsequent search. Appellant's argument in this connection is simply that the search of a premises for any purpose was not based upon a lawful search warrant, that warrant having been quashed by the Court. Therefore, it would follow that any arrest of the appellant in connection with things obtained as a result of the unlawful search warrant would be void and insufficient to make further search of the premises as being incidental to that arrest.

The appellant argues under his first point that the trial court erred in failing to grant the appellant's motion to suppress the three marked bills as exhibits in evidence because they too, were obtained under the invalid search warrant. We are of the opinion that the marked bills were not obtained under the search warrant. The search warrant, exhibit "A" in the record, was for marijuana concealed in the house occupied by Norris and the return enumerated various items found in the house which were excluded from evidence. The three marked bills were found outside the house following Norris's lawful arrest, and were found where the officers saw Norris go after receiving the marked bills and as the officers

approached him just prior to his arrest. It is true that under the testimony of the sheriff he advised Norris that he was under arrest for the *possession* of marijuana rather than for the sale of it for which he was subsequently charged and convicted. But under the evidence in this case, the sheriff had a right to arrest Norris for possession of the marijuana he saw him sell and deliver to Pharr. When the officers failed to find the marked money on Norris's person when they searched him incidental to his arrest, they would have been derelict in their duty had they not looked for the marked money at the only place they saw Norris go between the time they saw him receive the money and the time of his arrest. The Fourth Amendment to the Constitution only protects against *unreasonable* searches and seizures. *Bedell* v. *State*, 257 Ark. 895, 521 S.W. 2d 200, and the appellant's first point actually turns on the reasonableness of the search here involved. See *Ker* v. *California*, 374 U.S. 23 (1963), as later limited to some extent in *Chimel* v. *California*, 395 U.S. 752 (1969). We conclude, however, that the exigency of the circumstances added to the reasonableness of the search for the marked money under the totality of the evidence in the case at bar. The warrantless search of automobiles to prevent the loss or destruction of incriminating evidence as approved in *Chambers* v. *Maroney*, 399 U.S. 42 (1970) and many federal and state cases since then has been extended to other objects where probable cause exists and the opportunity to search is fleeting. Such search was held reasonable as applied to a suitcase in *United States* v. *Mehciz*, 437 F. 2d 145 (1971), and as applied to ladies' handbags in *United States* v. *Hand*, 516 F. 2d 472 (1975). The case at bar, however, is more in point with the California case of *People* v. *Martinez*, 64 Cal. Rpt. 666, where the police officers saw the appellant glance in the direction of their slowly moving police vehicle in line of traffic and then throw a paper bag out of the automobile window. The officers stopped the appellant; returned to the paper bag and searched it, where they found marijuana which was accepted in evidence over appellant's objection that it was obtained without a search warrant. It is abundantly clear from the evidence in the case at bar that Norris simply rid himself of the incriminating money as the police officers converged upon him immediately following their observation of the illegal sale of marijuana. We hold that the search for the marked money was

reasonable under the contingency of all the circumstances in this case, and that the trial court did not err in admitting the marked money into evidence with the attending testimony in relation thereto.

## II
The court erred in refusing to allow a defense witness to testify.

We are forced to the conclusion that the judgment must be reversed under this point. It appears from the evidence in the record that one Vickie Whisenhunt was a disinterested spectator who attended the trial. At a recess in the proceedings on the second day of trial, the appellant's attorneys received information that Miss Whisenhunt had said that during the trial on the previous day, she was sitting in the courtroom next to the prosecuting witness, Mr. Pharr, and that Pharr told her he thought the appellant had "set him up" and helped send him to prison and that he was setting the appellant up in the trial then in progress.[1] The defense called Miss Whisenhunt as a witness and the state objected to her testifying because the defense had requested sequestration of the witnesses, which request was granted, and Miss Whisenhunt had been sitting in the courtroom throughout the entire trial. This court addressed the question here involved in *Williams* v. *State,* 258 Ark. 207, 523 S.W. 2d 377 (1975), and in that case we said:

> The rule consistently applied by this court is that a violation by a witness of the rule of sequestration of witnesses, through no fault of, or complicity with, the party calling him, should go to the credibility, rather than the competency of the witness. *Harris* v. *State,* 171 Ark. 658, 285 S.W. 367; *Hellems* v. *State,* 22 Ark. 207; *Golden* v. *State,* 19 Ark. 590; *Pleasant* v. *State,* 15 Ark. 624. The power to exclude the testimony of a witness who has violated the rule should be rarely exercised. We have been unable to find any case in which this court has sustained the action of a trial court excluding the testimony of such a witness. While the witness is subject

---

[1]It must be remembered that Pharr said he cooperated with the police for "personal reasons."

to punishment for contempt and the adverse party is free in argument to the jury, to raise an issue as to his credibility by reason of his conduct, the party, who is innocent of the rule's violation, should not ordinarily be deprived of his testimony. *Harris* v. *State, supra; Aden* v. *State*, 237 Ark. 789, 376 S.W. 2d 277; *Mobley* v. *State*, 251 Ark. 448, 473 S.W. 2d 176.

Although the trial court has some discretion in the matter, its discretion is very narrow and more readily abused by exclusion of the testimony than by admitting it. *Harris* v. *State, supra*. It has even been held that failure to make a formal proffer of the testimony of a witness excluded upon no basis other than his violation of a sequestration order, without the knowledge, procurement or consent of defendant or defense counsel cannot be used to deprive the accused of his constitutional right to compulsory attendance of witnesses in his behalf. See *Braswell* v. *Wainwright*, 463 F. 2d 1148 (5 Cir. 1972). See Art. 2, § 10, Constitution of Arkansas.

The facts in *Mobley* v. *State*, 251 Ark. 448, 473 S.W. 2d 176 (1971), were very similar to those in the case at bar. The facts in that case were stated as follows:

After the state completed its evidence in chief and rested, the court was recessed for lunch. When the court reconvened, appellant's attorney called Otis Green to the witness stand, and the circuit judge observed that he had been in the courtroom all morning. Appellant's attorney replied that he had caused a subpoena to be issued for this witness during the noon recess. When the witness admitted that he had been in the courtroom all morning, and had heard all the testimony in the case, the judge ruled that he could not testify.

\* \* \*

Appellant's attorney stated that he was not aware of Green's presence in the courtroom or his identity until the noon recess. His statement went unchallenged.

We held that the trial court erred in refusing to allow Green to testify.

### III

The court erred in allowing highly prejudicial testimony by a state's witness in rebuttal concerning unrelated, alleged unlawful conduct remote in time to the offense charged.

The appellant Norris had testified on cross-examination that he had never sold marijuana to Larry Lein. Mr. Lein was called as a witness for the state in rebuttal and his testimony was first objected to for the reason that his name was not endorsed by the information. It appears that Mr. Lein had been subpoenaed the previous day. At a hearing in chambers it appears that Mr. Lein would testify that he had purchased marijuana from the appellant approximately 18 months prior to the trial. His testimony was further objected to by the appellant as being too remote in time. After considerable colloquy between the court and defense attorney as to the remoteness of the transaction to which Lein would testify, the attorney for the appellant stated that the court had made a previous applicable ruling pertaining to the remoteness of some of the activity of the prosecuting witness Pharr and the record then appears as follows:

THE COURT: No, sir, Mr. Tackett, I didn't rule that.

MR. BOYD TACKETT, SR.: I thought you did. At any rate, Larry Lein has been in the penitentiary himself, *and I want to hear him testify.*

THE COURT: Well, gentlemen, with that statement, let's return to the courtroom. (Our emphasis.)

It is apparent that the defendant waived his objection to Mr. Lein's testimony and we find this assignment without merit. In light of a new trial, however, see *Randall* v. *State,* 239 Ark. 312, 389 S.W. 2d 229 (1965); *Spence v. State,* 184 Ark. 139, 40 S.W. 2d 986 (1931), and *Fulwider* v. *Woods,* 249 Ark. 776, 461 S.W. 2d 581 (1971).

## IV

The court erred in refusing defendant's requested instructions Nos. 1 and 2 and refusing to allow defendant to present evidence concerning entrapment.

The proffered instructions referred to under this point had to do with entrapment. We consider it unlikely that the alleged error under this point will arise again in the same context at a new trial so we deem it unnecessary to discuss this point.

## V

The court erred in construing the jury verdict and in sentencing the defendant to punishment in excess of the verdict.

The jury verdict as actually returned by the jury fixed the appellant's punishment as "confinement in the state penitentiary for 10 years and/or by a fine of $4,000.00." The clerk read the verdict in open court as "confinement in the state penitentiary for 10 years, and by a fine of $4,000.00." It is obvious that such "and/or" verdict is at least confusing. Apparently the confusion arose here from the "and/or" form of the verdict furnished to the jury. In any event, we shall not pursue the matter further in this opinion for the reason that the question is not likely to arise again at a new trial.

## VI

The court erred in denying defendant's motion for new trial.

This assignment is now moot. The judgment is reversed and this cause remanded for a new trial.

Reversed and remanded.