Frederick DANIELS v. STATE of Arkansas

CR 87-94                                                    739 S.W.2d 135

Supreme Court of Arkansas
Opinion delivered November 2, 1987
[Rehearing denied November 23, 1987.*]

*Glaze, J., would grant rehearing.

*Chandler & Thomason*, by: *J. G. Molleston*, for appellant.

*Steve Clark*, Att'y Gen., by: *Robert A. Ginnaven III*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. On January 13, 1987, appellant Frederick Daniels was tried and convicted by a jury of raping Larietta Morehead, eleven year old daughter of Ms. Linda Curry. Daniels was sentenced to a twenty-year term in the Arkansas Department of Correction. On appeal, he raises three issues: (1) his constitutional rights were violated when the trial judge refused to allow one of his witnesses to testify; (2) the court erred when it refused to allow him to develop reputation testimony from a "reluctant" witness; and (3) the court erred when it permitted the prosecutor to comment on appellant's post-arrest silence.

Frederick Daniels and Linda Curry had gone together prior to the rape incident which occurred on August 23, 1986, but had broken up, according to Ms. Curry, long before the date in question. At trial, each claimed responsibility for breaking off with the other and their testimony as to what occurred between them on August 23 in the community of McNeil where they lived, was in sharp conflict.

Ms. Curry testified that on that day she had taken her daughter and son to the home of her brother, James Williams, whose wife, Delores, kept the children for her. She testified that as she was leaving a local store, appellant confronted her, jerked her arm and said he wanted to talk to her. She told him "it was over" and he jerked her arm again and said, "Hey Linda, you don't believe I'll run over you?" As she walked away, Curry related appellant got in his car and was "coming behind me" when she

ran behind the church. She said that appellant had been drinking heavily. Ms. Curry stated she again encountered appellant at her sister Carolyn's house, where she told him she had someone else and he responded, "he didn't care anymore, he didn't care, it was the mama, daddy, the daughter or the son, that he was going to get even with me." She said he again tried to run over her with his car.

Ms. Curry said she went home and her brother brought her son home without her daughter. She testified she later called about her daughter's whereabouts and Delores Williams told her Larietta had left earlier to walk home. James Williams testified he saw Larietta get into appellant's car about 5:30 or 6:00 that evening. Ms. Curry said she called the police, and while waiting for them, appellant drove up to the house with her daughter. She said Larietta was badly frightened when she got out of the car, that her blouse was torn and she had one of her shoes in her hand, that "her hair was all over her head." Ms. Curry and Delores Williams questioned Larietta and then Ms. Curry took her to the hospital where she was examined sometime between 11:00 p.m. and midnight. The doctor, who examined the child, and the state's forensic serologist testified about physical evidence that indicated sexual intercourse recently had occurred. The examining doctor testified that the fresh blood and blood clot at the vaginal mucosa indicated the tear had "just happened within the last less (sic) than 30 minutes to an hour."

In his testimony, appellant denied he had raped the girl. He admitted having seen Curry at the store where he asked if he could talk to her "about her situation." She agreed, he said, if he would take her to Rent 'n Own. He said they first stopped in front of her sister's house where Curry counted her money to pay on her rental note and then they proceeded to E-Z Rental. Appellant claims Curry paid her rent, and they returned to her sister's house. He testified Curry got mad at him because she felt he was having an affair with someone else. He left, went to a local tavern, Hubie's, and stayed until about 9:30 p.m. After leaving Hubie's, he testified he saw Larietta walking home and he gave her a ride home. When he got in Curry's yard, he said Curry ran out on the porch and accused him of rape.

At trial, part of the state's case involved argument and proof

that Curry had broken off her relationship with appellant and that he threatened to get either her or somebody in her family. Curry denied appellant's claim that she was friendly or rode with him on the day her daughter was sexually abused. To impeach Curry's testimony and to bolster his own on this point, appellant called witness Johnny Moore, an employee of the Rent 'n Own store. The trial court excluded Moore as a witness because his name did not appear on the pre-trial witness list and because Moore had unknowingly violated the sequestration rule, A.R.E. Rule 615, by entering the courtroom during the trial and hearing several witnesses testify.

Recently this court took the opportunity to fully address the operative effect and application of Rule 615. We noted that a trial court has a very narrow discretion to exclude the testimony of a noncomplying witness. *Blaylock* v. *Strecker*, 291 Ark. 340, 724 S.W.2d 470 (1987); *see also Norris* v. *State*, 259 Ark. 755, 536 S.W.2d 298 (1976). We said further that narrow discretion can be exercised by the trial judge only when the noncompliance is had with the consent, connivance or procurement of a party or his attorney. *Blaylock*, 291 Ark. at 345. In *Norris*, this court held that the rule consistently applied by this court is that a violation by a witness of the rule of sequestration of witnesses, through no fault of, or complicity with, the party calling him, should go to the credibility, rather than the competency of the witness. *See also Allen* v. *State*, 277 Ark. 380, 641 S.W.2d 710 (1982). In the instant case, the record reflects nothing to indicate Moore's presence during some of the witnesses' testimony was due to anything more than his ignorance of the fact that the sequestration witness rule had been invoked. The state offered no evidence concerning complicity or fault on appellant's part for Moore's having sat through some of the trial. Accordingly, we hold the trial court erred in excluding Moore as a witness under the circumstances.

Although error was committed, we must also decide if appellant was substantially prejudiced when he was deprived of the excluded testimony. *Id.*, *Allen*, 277 Ark. 385. Moore's proffered testimony includes two exhibits from Rent 'n Own, a computer printout and a rental payment receipt, that reflect Curry's rental account had been paid on August 23. Neither of the exhibits indicates who actually made the payment.

The relevancy of Moore's testimony was never addressed below. Based on the state of the record as it exists, we are satisfied appellant was not prejudiced by the exclusion of that testimony. Appellant concedes that Moore could not state who made the rental payment, only that it was made by someone on August 23. We think the excluded proof was essentially inconsequential and does not meet the requirement of substantiality. A.R.E. Rule 103. In fact, when defense counsel called Mr. Moore to the stand he commented, "It's a *very minor point* that he's called for." (Our italics). We agree. See *Berna* v. *State*, 282 Ark. 563, 670 S.W.2d 435 (1984).

Next, appellant insists the trial court erred in refusing to allow the defense to develop from a reluctant witness, Ms. Rocinty McKinney, testimony that the reputation of Ms. Linda Curry for truthfulness in the community was bad.

Defense counsel called Ms. McKinney as a witness and established she had been at Hubie's for about an hour on the evening of August 23 and that Daniels was there when she came and when she left. The witness was asked if she was familiar with Linda Curry's reputation around McNeil. She answered, "I don't know anything about her reputation." There was an objection and considerable discussion at the bench. The trial judge ruled that the witness could be asked if she knew Ms. Curry's reputation for truthfulness and whether it was good or bad. Counsel then asked Ms. McKinney, "Do you know Linda Curry's reputation in McNeil?" Her answer was, "No." She was asked again if she knew Linda Curry's reputation in McNeil and again she answered in the negative. At that point the trial court sustained an objection to further attempts to question the witness about reputation. We cannot say it was error for the trial court to curtail further efforts to obtain a desired answer. The witness was asked three times whether she knew Ms. Curry's reputation, she answered unequivocally in the negative. The matter addressed itself at that stage to the trial court's discretion and we think no abuse occurred. *Caldwell* v. *State*, 267 Ark. 1053, 594 S.W.2d 24 (1980).

Appellant's final point is that the trial court erred in permitting the state to attack the defendant's testimony based upon his silence during the investigation of the case. On cross

examination appellant was asked if he had given the names of his alibi witnesses to one of the investigating officers, to which he answered, "No, I didn't." The following occurred:

Q: You mean you've been sitting in jail up there a hundred and forty-three days and you haven't given the police officers alibi witness one?

A: No, I haven't.

Q: You just didn't have time to think about that?

A: Think about it? I didn't talk to no one but my attorney.

Mr. MOLLESTON: Your Honor, I'm going to object to this line of questioning. It's going to attorney-client relations and attorney advice and it's not proper to attribute it to Mr. Daniels own will in this situation.

THE COURT: Objection will be sustained on that basis.

When the objection was sustained the prosecutor immediately moved to a different topic. On appeal, appellant bases his objection upon a different premise. In trial the objection was based on attorney-client privilege, whereas on appeal he urges that his fifth amendment right to remain silent was used to discredit his testimony. *Tosh* v. *State*, 278 Ark. 377, 646 S.W.2d 6 (1983). Be that as it may, the appellant was afforded all the relief requested of the trial court, namely that the prosecutor abandon that line of questioning, which was done. Appellant requested neither an admonition nor a mistrial and since his objection was sustained no error occurred.

The judgment is affirmed.

PURTLE, J., and GLAZE, J., dissent.

TOM GLAZE, Justice, dissenting. The majority concedes the trial court erred in excluding the testimony of Johnny Moore, but it concludes, citing *Berna* v. *State*, 282 Ark. 563, 670 S.W.2d 435 (1984), that the error was inconsequential and insufficient to reverse. The majority supports its position by reciting defense counsel's following remark, I believe, a bit out of context, *viz.*, "It's a very minor point that he's [Moore's] called for." While it is

true that Moore's testimony was for the subservient purpose of introducing two business records or exhibits, those records offered were for a very major point—to impeach the testimony of the state's witness, Curry, regarding her relationship with appellant the day she claimed appellant raped her daughter. At trial, Curry claimed that, on the day of the rape, appellant was hostile and threatening towards her and her family, including her daughter, plus she denied having ridden with appellant in his car on August 23. Appellant offered two business records through Moore to support appellant's own testimony and to impeach Curry's that his relation with Curry was friendly on August 23rd, and that he not only knew she had paid her rent on that date but he also drove her to the Rent 'n Own store to make the payment.

The trial court excluded Moore's testimony for other reasons and never reached the question of whether Moore's testimony—more particularly the records showing Curry's rent was paid on August 23—was relevant. In this review, the majority obviously held that evidence is not relevant since it concludes no reversible error resulted from its exclusion. It is at this point I disagree with the majority. If the trial judge had had the opportunity to rule on the relevancy issue, this court could have been in a better position to decide if the judge had abused his discretion in excluding the testimony. At least, we would have had the benefit of the trial judge's reasoning in so ruling.

Nonetheless, based on the state of the record as it exists now, I cannot say with any degree of certainty that appellant was not prejudiced by the exclusion of that testimony. The evidence bearing on appellant's guilt or innocence of the rape charge was a close question, depending greatly upon whose testimony the jury believed. Curry's as well as appellant's credibility was in issue. Obviously, any evidence that had a tendency to show that Curry and appellant had an amiable contact on August 23 would serve to undermine to some extent Curry's charges that appellant threatened Curry and raped her daughter in retaliation for Curry breaking off her relationship with appellant. Bias may be inquired into on cross-examination and may be proven extrinsically. *Allen v. State*, 277 Ark. 380, 641 S.W.2d 710 (1982); *see also Hice v. State*, 11 Ark. App. 184, 668 S.W.2d 552 (1984) (wherein trial court erred in excluding defense testimony that police officer refused to administer breathalizer test to defendant, the appellate

court holding jury entitled to hear such testimony as bearing on the officer's credibility).

The harm or prejudice done appellant's case by the exclusion of Moore's testimony is especially evident when considering the close evidence concerning appellant's guilt. The record clearly reflects evidence consistent with Curry's daughter having been raped; less clear is where, and with whom, she was when the rape occurred. While the record might prove more definitive on a retrial of this case on who raped the girl, the evidence before us now is somewhat confusing. For example, the doctor who examined Curry's daughter placed the time of rape *after* the time appellant delivered the girl to Curry.[1] Also, Curry's brother, James, testified he saw appellant pick up the girl between 5:30 and 6:00 p.m.; appellant said it was 9:30 p.m., after he had been to Hubie's. The girl and her brother had been at James's home that day but James had taken the son—not the daughter—home early. The state's case showed the physical evidence could not rule out someone with appellant's O blood type. James testified he had O-type blood.

The girl's testimony was most damaging and, it alone, would have been sufficient for the jury to convict the appellant. In sum, she related the appellant pulled her into his car, took her to some woods and raped her. However, on cross-examination, the girl did not respond to the question concerning whether her mother told her to say appellant did it. Curry's credibility was in issue throughout the trial, both directly, and, when considering her daughter's failure to respond as just noted, indirectly. One witness, Rocinty McKinney, said that Curry had asked McKinney to alter her testimony.[2]

In view of the credibility issues and the conflicting evidence that exist in the record, I am unable to say appellant was not prejudiced or harmed by the trial court's ruling to exclude the Moore testimony. Therefore, I would reverse.

---

[1] The victim was examined between 10:50 p.m. and 12:10 a.m. and the doctor said the rape occurred thirty minutes to an hour earlier. At the earliest, the time would have been 9:50 p.m.; and the appellant delivered the girl at 9:40 p.m.

[2] McKinney testified she had seen appellant at Hubie's on August 23, but could not give the time.

Purtle, J., joins in this dissent.