The Honorable H.G. Foster, Prosecuting Attorney Twentieth Judicial District P.O. Box 1105 Conway, AR 72033
Dear Mr. Foster:
I am writing in response to your request for my opinion on the following question:
 Can a private business on private property place restrictions on law enforcement authorities regarding access to its employees while they are at work for the purpose of serving warrants for arrest, misdemeanor or felony; serving subpoenas for criminal cases, misdemeanor or felony; questioning suspects or witnesses to felonies?
RESPONSE
In order to answer these questions, I would need to conduct a factual inquiry into the particular business at issue — a task I am unauthorized to undertake. However, as a general proposition, with the possible exception of highly regulated businesses, I believe a private employer might restrict law enforcement officers from engaging in the described acts in non-public areas of the business without first obtaining either the employer's permission or a search warrant.
Whatever the purpose, nonconsensual entry by law enforcement officials onto the non-public areas of private property implicate the constitutional proscription against unreasonable searches and seizures. As the Arkansas Supreme Court noted in Hosto v. Brickel, 265 Ark. 147,151-52, 577 S.W.2d 401 (1979):
 The constitutional prohibitions against searches are contained in Amendment 4 to the Constitution of the United States and in Art. 2, 15, of the Constitution of Arkansas. Protection is afforded only against unreasonable searches. South Dakota v. Opperman, 128 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); Wickliffe v. State, 258 Ark. 544, 527 S.W.2d 640; Milburn v. State, 260 Ark. 553, 542 S.W.2d 490; Young v. State, 254 Ark. 72, 491 S.W.2d 89; Thomas v. State, 262 Ark. 83, 553 S.W.2d 41. See also, Bedell v. State, 257 Ark. 895, 521 S.W.2d 200, cert. den., 430 U.S. 931, 97 S.Ct. 1552, 51 L. Ed. 2d 775
(1977); Wyman v. James, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408
(1971). This does not mean that a search without a warrant is necessarily unreasonable and there are many well recognized types of warrantless searches that do not violate these constitutional protections. See Milburn v. State, supra; Morris v. State, 259 Ark. 755, 536 S.W.2d 298; Wickliffe v. State, supra; Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). The basic and essential purpose of these provisions is to protect the individual against unreasonable governmental intrusions into his privacy, whenever and wherever his expectation of privacy is legitimate. U.S. v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); South Dakota v. Opperman, supra; Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930
(1967); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782
(1967); Jones v. U.S., 357 U.S. 493, 78 S.Ct. 1253,2 L.Ed.2d 1514 (1958). The reasonableness of a search in any case must be decided upon the basis of the existing facts and circumstances. Moore v. State, 244 Ark. 1197, 429 S.W.2d 122, cert. den. 393 U.S. 1063, 89 S.Ct. 714, 21 L.Ed.2d 705 (1969); Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); South Dakota v. Opperman, supra. One of the most important factors to be considered is the existence, extent and legitimacy of the citizen's right to expectation of privacy under the circumstances. U.S. v. Chadwick, supra; South Dakota v. Opperman, supra. See Perez v. State, 260 Ark. 438, 541 S.W.2d 915; Gerard v. State, 237 Ark. 287, 372 S.W.2d 635. See also, Sanders v. State, 262 Ark. 595, 559 S.W.2d 704; Air Pollution Variance Board v. Western Alfalfa Corp., 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974).
As reflected in the following from New York v. Burger, 482 U.S. 691,699-700 (1987), a lesser expectation of privacy attaches to commercial property than to private homes:
 The Court long has recognized that the Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises, as well as to private homes. See v. City of Seattle, 387 U.S. 541, 543, 546 (1967). An owner or operator of a business thus has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable, see Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). This expectation exists not only with respect to traditional police searches conducted for the gathering of criminal evidence but also with respect to administrative inspections designed to enforce regulatory statutes. See Marshall v. Barlow's, Inc., 436 U.S. 307, 312-313 (1978). An expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home. See Donovan v. Dewey, 452 U.S. 594, 598-599 (1981). This expectation is particularly attenuated in commercial property employed in "closely regulated" industries. The Court observed in Marshall v. Barlow's, Inc.: "Certain industries have such a history of government oversight that no reasonable expectation of privacy, see Katz v. United States, 389 U.S. 347, 351-352 (1967), could exist for a proprietor over the stock of such an enterprise." 436 U.S., at 313.
Accord, Minnesota v. Carter, 525 U.S. 83, 90-91 (citing Burger); UnitedStates v. Dunn, 480 U.S. 294, 314 (1987) (recognizing that the respondent had a reasonable expectation of privacy in his commercial barn). Seealso Ramerman, Shut the Blinds and Lock the Doors — Is That Enough?: TheScope of Fourth Amendment Protection Outside Your Own Home, 75 Wash. L. Rev. 281 (2000) (generally reviewing case law on searches of commercial premises); enclosed Ark. Op. Att'y Gen. No. 2000-324 (same).
In O'Connor v. Ortega, 480 U.S. 709, 716-17 (1987), the Supreme Court made clear that the reasonable expectation of privacy against police searches extends to employees in the workplace:
 Within the workplace context, this Court has recognized that employees may have a reasonable expectation of privacy against intrusions by police. See Mancusi v. DeForte, 392 U.S. 364 (1968). As with the expectation of privacy in one's home, such an expectation in one's place of work is "based upon societal expectations that have deep roots in the history of the Amendment." Oliver v. United States, supra, at 178, n. 8. Thus, in Mancusi v. DeForte, supra, the Court held that a union employee who shared an office with other union employees had a privacy interest in the office sufficient to challenge successfully the warrantless search of that office. . . .
 The operational realities of the workplace, however, may make some employees' expectations of privacy unreasonable when an intrusion is by a supervisor rather than a law enforcement official. Public employees' expectations of privacy in their offices, desks, and file cabinets, like similar expectations of employees in the private sector, may be reduced by virtue of actual office practices and procedures, or by legitimate regulation. Indeed, in Mancusi itself, the Court suggested that the union employee did not have a reasonable expectation of privacy against his union supervisors. 392 U.S., at 369. The employee's expectation of privacy must be assessed in the context of the employment relation. An office is seldom a private enclave free from entry by supervisors, other employees, and business and personal invitees. Instead, in many cases offices are continually entered by fellow employees and other visitors during the workday for conferences, consultations, and other work-related visits.
As suggested in the foregoing, the reasonableness of one's expectation of privacy will depend on the nature of the business activity being conducted. For instance, in Maryland v. Macon, 472 U.S. 463, 469 (1985), the Supreme Court held that the expectation of privacy could not be reasonable in an area that by its very nature was public:
 A search occurs when "an expectation of privacy that society is prepared to consider reasonable is infringed." United States v. Jacobsen, 466 U.S. 109, 113 (1984). Here, respondent did not have any reasonable expectation of privacy in areas of the store where the public was invited to enter and to transact business. Cf. United States v. Knotts, 460 U.S. 276, 281-282 (1983).
The Arkansas Court of Appeals has further held that "[l]aw enforcement officers may accept a general public invitation to enter commercial premises for purposes not related to the trade conducted therein."Washington v. State, 42 Ark. App. 188, 194, 856 S.W.2d 631 (1993), citingUnited States v. Berrett, 513 F.2d 154 (1st Cir. 1975). However, the U.S. Supreme Court has stressed that such areas must genuinely be public: "The owner of a business has not, by the necessary utilization of employees in his operation, thrown open the areas where employees alone are permitted to the warrantless scrutiny of Government agents." Marshallv. Barlow's, Inc., 436 U.S. 307, 315 (1978).
Specifically with respect to arrest warrants, the U.S. Supreme Court has stated the following general rule:
 [A]bsent exigent circumstances, the Fourth Amendment prohibits police from searching an individual's home or business without a search warrant even to execute an arrest warrant for a third person. We agreed with that proposition in Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). . . .
Pembaur v. City of Cincinnati, 475 U.S. 469, 474 (1986). The Court applied this principle in pronouncing unconstitutional the warrantless entry and search by police of the petitioner's clinic. Id. at 478. InSteagald, the Court justified this rule as follows:
 [A]n arrest warrant alone will suffice to enter a suspect's own residence to effect his arrest. Furthermore, if probable cause exists, no warrant is required to apprehend a suspected felon in a public place. United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Thus, the subject of an arrest warrant can be readily seized before entering or after leaving the home of a third party. Finally, the exigent-circumstances doctrine significantly limits the situations in which a search warrant would be needed. For example, a warrantless entry of a home would be justified if the police were in "hot pursuit" of a fugitive. See United States v. Santana, 427 U.S. 38, 42-43, 96 S.Ct. 2406, 2409-2410, 49 L.Ed.2d 300 (1976); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Thus, to the extent that searches for persons pose special problems, we believe that the exigent-circumstances doctrine is adequate to accommodate legitimate law enforcement needs.
451 U.S. at 221-22.
In my opinion, then, the police are authorized to execute an arrest warrant in the non-public areas of a private business without first obtaining a search warrant only if they have probable cause to believe that the suspect is on the premises and if exigent circumstances preclude them from first obtaining a warrant. Pembaur makes clear that probable or reasonable cause[1] alone is not sufficient to justify a warrantless incursion by the authorities into the private areas of business premises; there must further be exigent circumstances that preclude obtaining a search warrant.
Before applying these principles to your specific questions, I should define the terms "probable cause" and "exigent circumstances." InIllinois v. Gates, 462 U.S. 213, 238 (1983), the U.S. Supreme Court held that determining "probable cause" will involve a "totality of the circumstances analysis" in order to "make a practical, commonsense decision whether, given all the circumstances . . ., including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability" that what is in contention is true, such as the fact "that contraband or evidence of a crime will be found in a particular place." More recently, in Ornelas v. UnitedStates, 517 U.S. 690, 696 (1996), the Supreme Court declared that probable cause exists if the known facts and circumstances would cause a reasonable person to believe a search will reveal evidence of a crime. With respect to arrests, the Arkansas Supreme Court has defined the term as follows:
 Probable cause, or reasonable cause, exists where the facts and circumstances within the arresting officer's knowledge, and of which he had reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested. Coble v. State, 274 Ark. 134, 624 S.W.2d 421 (1981); McGuire v. State, 265 Ark. 621, 580 S.W.2d 198 (1979).
Gaylor, 284 Ark. at 217.
Defining "exigent circumstances" is a more difficult task usually approached by way of illustration. In Welsh v. Wisconsin, 466 U.S. 740,749-50 (1984), the U.S. Supreme Court offered the following analysis:
 [T]he court decided in Payton v. New York, [445 U.S. 473 (1980),] supra, that warrantless felony arrests in the home are prohibited by the Fourth Amendment, absent probable cause and exigent circumstances. Id., at 583-590. At the same time, the Court declined to consider the scope of any exception for exigent circumstances that might justify warrantless home arrests, id., at 583, thereby leaving to the lower courts the initial application of the exigent-circumstances exception. Prior decisions of this Court, however, have emphasized that exceptions to the warrant requirement are "few in number and carefully delineated," United States v. United States District Court,
[407 U.S. 297 (1972),] supra, at 318, and that the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests. Indeed, the Court has recognized only a few such emergency conditions, see, e.g., United States v. Santana, 427 U.S. 38, 42-43 (1976) (hot pursuit of a fleeing felon); Warden v. Hayden, 387 U.S. 294, 298-299 (1967) (same); Schmerber v. California, 384 U.S. 757, 770-771 (1966) (destruction of evidence); Michigan v. Tyler, 436 U.S. 499, 509 (1978) (ongoing fire), and has actually applied only the "hot pursuit" doctrine to arrests in the home, see Santana, supra.
 Our hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor. Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. See Payton v. New York, supra, at 586. When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.
(Footnote omitted.)
In Humphrey v. State, 327 Ark. 753, 766-67, 940 S.W.2d 860 (1997), the Arkansas Supreme Court offered the following concordant analysis:
 Exigent circumstances are those requiring immediate aid or action, and, while there is no definite list of what constitutes exigent circumstances, several established examples include the risk of removal or destruction of evidence, danger to the lives of police officers or others, and the hot pursuit of a suspect. Butler v. State, 309 Ark. 211, 829 S.W.2d 412 (1992).
The court then invoked its earlier decision in Gaylor to define the following "six potential exigent circumstances" — ones clearly offered in the disjunctive:
1) the commission of a grave offense;
2) belief that the suspect is armed;
3) a clear showing of probable cause;
 4) strong reason to suspect that the suspect is in the premises being entered;
 5) likelihood that the suspect will escape if not swiftly apprehended; and
6) danger of the destruction of evidence.
327 Ark. at 767 (emphasis added). In my opinion, the third and fourth of these "exigent circumstances" conflate what the U.S. Supreme Court has clearly declared to be the independent requirements of exigency and probable cause to support a warrantless search. See discussion of Gates,Pembaur, Payton, Welsh and Steagald, supra. To define "probable cause" as in itself constituting an "exigent circumstance" would be, in effect, to dispense with one of the two requirements.[2]
The point I have just made bears directly on your question. If probable cause alone were enough to support a warrantless search, an officer could enter private business premises without a search warrant for the purpose of executing an arrest warrant so long as he had clear reason to believe the suspect was on the premises. Obviously, if this power resides in law enforcement officers, an employer will not be able to condition their entry onto his premises in the manner suggested in your request. However, I do not believe this to be the law as interpreted by the U.S. Supreme Court. In my opinion, under the authorities discussed above, absent exigent circumstances or a search warrant, I believe an employer might indeed restrict law enforcement agents from executing an arrest warrant on an employee in a non-public area of his business. As the Supreme Court noted in Steagald, "the subject of an arrest warrant can be readily seized before entering or after leaving the home of a third party." 451 U.S. at 221. I believe this same reasoning applies to the non-public areas of commercial premises.
This reasoning further applies a fortiori to serving subpoenas and conducting interrogations, since the government's interest in immediately undertaking such tasks is less significant than its interest in immediately arresting a suspect pursuant to a valid warrant. As the U.S. Supreme Court noted in Delaware v. Prouse, 440 U.S. 648, 654 (1979): "[T]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." Accord,Washington v. State, 42 Ark. App 188, 194 (1993). Inasmuch as the service of process and conducting interrogations are "law enforcement practices," their importance should be balanced against private employers' and employees' privacy interests in the same manner as would the even more compelling interest in effecting an arrest. See, e.g., Donovan v. LoneSteer, Inc., 464 U.S. 408 (1984) (conducting a standard Fourth Amendment analysis of the question whether process could be served without a judicial warrant or the business owner's consent in the lobby of a motel); Chandler v. Miller, 520 U.S. 305, 308 (1997) (conducting Fourth Amendment analysis of interrogation).
As the Court further noted in Prouse: "The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of `reasonableness' upon the exercise of discretion by government officials, including law enforcement agents, in order `"to safeguard the privacy and security of individuals against arbitrary invasions. . . ."'"440 U.S. at 653-54, quoting Marshall v. Barlow's, Inc., 436 U.S. 307, 312
(1978), in turn quoting Camara v. Municipal Court, 387 U.S. 523, 528
(1967). In Dow Chemical Co. v. United States, 476 U.S. 227, 237 (1986), the Court stressed that "`[t]he businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property.' Seev. City of Seattle, supra, at 543." Similarly, in Carter, the Court echoed its earlier declarations "that in some circumstances a worker can claim Fourth amendment protection over his own workplace. See, e.g.,O'Connor v. Ortega, 480 U.S. 709." 525 U.S. at 90-91. Applying these principles, if, absent exigent circumstances, it is unreasonable to make a warrantless, nonconsensual entry into the private areas of a business for the important purpose of executing an arrest warrant, it is perforce unreasonable to do so in order to perform the lesser tasks of serving a subpoena or conducting an interrogation. See attached Ark. Ops. Att'y Gen. Nos. 87-317 and 99-319 (opining that duly appointed civil process servers are precluded from serving civil process in non-public areas of business without employer approval).
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] For Fourth Amendment purposes, there is no material distinction between "probable" and "reasonable" cause. See Gaylor v. State,284 Ark. 215, 217, 681 S.W.2d 348 (1984) ("Reasonable cause is synonymous with the term "probable cause". A.R. Crim. P. Commentary to Article IV following A.R. Crim. P. Rule 10.1.") Accord Williams v. State,327 Ark. 97, 104
n. 1, 938 S.W.2d 547 (1997) ("Ark. R. Crim. P. 4.1(e) speaks in terms of `reasonable cause' to arrest without a warrant in lieu of `probable cause.' The two concepts will be used interchangeably for purposes of this opinion.")
[2] The Court in Gaylor offered the following analysis in support of its list of "potential exigent circumstances":
 Dorman v. U.S., 435 F.2d 385 (D.C. Cir. 1970), recently cited with approval in Welsh v. Wisconsin, 466 U.S. 740, 80 L.Ed.2d 732, 744
(1984), enumerates some exigent circumstances which may render a warrantless entry to arrest reasonable: 1) the commission of a grave offense, 2) belief that the suspect is armed, 3) a clear showing of probable cause to believe the suspect committed the crime, 4) strong reason to believe the suspect is in the premises being entered, and 5) likelihood that the suspect will escape if not swiftly apprehended. A sixth exigent circumstance to be considered is the danger of destruction of the evidence. See United States v. Santana, 424 U.S. 38
(1976).
284 Ark. at 217-18. However, the U.S. Supreme Court in Welsh invokedDorman only in support of the proposition that the gravity of an offense might in itself qualify as an exigent circumstance: "Without approvingall of the factors included in the standard adopted by that court, it is sufficient to note that many other lower courts have also considered the gravity of the offense an important part of their constitutional analysis." 446 U.S. at 752 (emphasis added). Although the Court in Welsh
expressly approved "leaving to the lower courts the initial application of the exigent-circumstances exception," id. at 749, Pembaur makes clear that state courts' case-by-case discretion cannot support simply merging the independent concepts of exigency and probable cause. If directly invited to approve such a merger, I predict the Arkansas Supreme Court would dismiss its borrowed recitation of the third and fourth potential exigent circumstances in Humphrey and Gaylor as mere dictum, since neither factor in any way influenced the Court's resolution of either case.