## GREEN V. STATE. JONES V. STATE. MITCHELL V. STATE.

1. HOMICIDE: *Murder in first degree: Intent.*

   One who commits a homicide is not guilty of murder in the first degree un-
   less there existed in his mind before the act of killing, a specific intent
   to take the life of the person slain. But it is not necessary that such in-
   tent be formed for any particular length of time before the killing; and
   where it is the result of deliberation and premeditation and reason is not
   dethroned, it may be conceived in a moment.

2. SAME: *Same: Instructions.*

   On a trial for homicide the court gave in charge to the jury the statutory
   definition of murder in the first degree, (Mansf. Dig., sec. 1521,) and
   instructed them that if the defendant inflicted the wounds on deceased as
   charged, "with the intent, formed in the mind at the time of the injuries,
   to take deceased's life and that such wounds did cause the death of de-
   ceased," they might convict of murder in the first degree. The court also
   charged the jury as follows: "An unlawful act, coupled with malice and
   resulting in death, will not of itself constitute murder in the first degree,
   but, in order to constitute murder in the first degree, the killing must have
   been intentional, after deliberation and premeditation." *Held:* That the
   jury were correctly charged as to the intent necessary to constitute murder
   in the first degree, since the effect of the instructions was to tell them
   that such intent must have preceded the act of killing.

3. SAME: *Same: Evidence.*

   On a trial for homicide, the evidence showed that the defendants and others
   combined to take the deceased from his room for the avowed purpose of
   whipping him; that during the night they entered the room in which he
   was sleeping and having forcibly carried him out, cruelly beat him; that
   on the next day his dead body was found wrapped in a quilt and near it
   a number of switches with "frazzled ends;" that his skull was fractured,
   one arm, the collar bone and three ribs were broken and the body lacer-
   ated with switches. *Held:* That, although there was no evidence to show
   who struck the fatal blow, the defendants having combined to commit
   a crime, are all responsible for the killing committed in the prosecution
   of the common design and that the verdict convicting them of murder in
   the first degree is sustained by the evidence.

4. SAME: *Evidence of accomplice.*

   Where a witness for the State, in a trial for murder, failed to report what he
   knew for two days through fear and because the accused had threatened

to kill him if he did report it, such failure did not make him an accomplice in the crime.

APPEALS from *Clark* Circuit Court.

R. D. HEARN, Judge.

*A. Curl*, for appellants.

It is manifest from the instructions given and refused by the court, that it held to the idea that an intentional killing, when not committed under justifiable circumstances, is, *per se*, murder in the first degree. Is this law? We think not. There is wanting the elements of deliberation and premeditation, and the intent to kill does not, necessarily, imply either. Deliberation signifies a measurable degree of calmness; premeditation means meditation upon before hand; yet the court said: "If at the time the blow is struck the intent to take life exists, the killing is murder in the first degree."

This is error. Mansf. Dig., sec. 1521; Whart. Law of Hom., p. 368. The killing must be (1) willful, (2) deliberate, and (3) premeditated. Ib., 368.

See, also, 7 Hump., 479-494; 1 Lea, (Tenn.) 285; 64 Ind., 56-60; 3 Kan., 450-482; 66 Mo., 13; 67 Id., 594.

Deliberation and premeditation are necessary ingredients in the crime of murder in the first degree. 11 Ark., 455; 35 Id., 585; 37 Id., 238; 40 Id., 511.

2. The only testimony corroborative of, or that connects appellant with, the killing is that of Bragg and Jim Mitchell. Bragg was one of the parties under indictment, and Mitchell is the only witness that corroborates Bragg. They were both accomplices, and one could not corroborate the other. Besides, their testimony is contradictory; one of them *lied*, and probably both.

3. The verdict is contrary to the evidence.

*Dan. W. Jones*, Attorney General, for appellee.

The evidence in this case, we think, shows a clear case of guilt, and the court properly charged the jury.

Instructions 1 and 2 are taken from the statutes.   Mansf. Dig., secs. 1516 to 1522 inclusive.

Instruction number 3 was properly given.   *Green v. State*, 38 Ark., 317.

Instruction number 4 properly defines the doubt upon which acquittal should be based.   *Palmore v. State*, 29 Ark., 248.

Instruction number 5 is based upon the statute.   Mansf. Dig., secs. 1505-1506; 37 Ark. Rep., 274.

However, it is useless to argue any of the instructions given at the instance of the State, save 7, 8 and 11, for no exception was saved to any other.

Instruction number 7 is supported by *McAdams v. State*, 25 Ark., 405; *Wright v. State*, 42 Ark., 94; *Palmore v. State*, 29 Ark., 248.

We presume the objection to instruction number 8 is based upon the concluding part of it.   We think it is clearly the law.   *Howard v. State*, 34 Ark., 433.

Instruction number 11 must be taken in connection with the other instructions, and when so taken the jury were properly instructed.   *Dunahoe v. Williams*, 24 Ark., 264.

Instruction "1 A" was properly modified by the trial court.   *Casat v. State*, 40 Ark., 511.

Instruction "2 A," asked by defendant, was properly modified by the court.   Mansf. Dig., secs. 1519, 1522, 1532, 1533.

The court properly instructed the jury as to a conviction on the testimony of an accomplice, and what it takes to constitute an accomplice in instructions numbers 12 and 13.

Now, there is no evidence to show that Mitchell was an

accomplice in any sense of the word, and a legal conviction might well be had upon the evidence of him and the witness. Bragg.

.We think this court has fully settled all questions raised on this point in the case of *Melton v. State*, 43 Ark., 371.

The verdict is amply sustained by the evidence.

BATTLE, J.

Willis Green, Dan. Jones, Anderson Mitchell and others were jointly indicted for the murder of Arthur Horton. They severed their trials, and Green, Jones and Mitchell were separately convicted of murder in the first degree. They filed separate motions for new trials, which were denied, and, severally, appealed to this court. One of the grounds of Green's complaint is, the court did not properly instruct the jury, in his trial, as to the intent necessary to constitute murder in the first degree.

1. HOMI-
CIDE:
Murder in
first degree:
Intent.

In order to constitute the killing of a human being murder in the first degree, there must be a specific intent to take life formed in the mind of the slayer before the act of killing was done. It is not necessary, however, that the intention be conceived for any particular length of time before the killing. It may be formed and deliberately executed in a very brief space of time. If it was the conception of a moment, but the result of deliberation and premeditation, reason being on its throne, it would be sufficient. The law fixes no time in which it must be formed, but leaves its existence as a fact to be determined by the jury from the evidence. *Bivens v. State*, 11 Ark., 455; *McAdams v. State*, 25 Ark., 405; *McKenzie v. State*, 26 Ark., 339; *Fitzpatrick v. State*, 37 Ark., 256; *Casat v. State*, 40 Ark., 524; *State v. Wieners*, 66 Mo., 13; *Com. v. Drum.*, 58 Penn. St., 9; *People*

*v. Majone*, 91 N. Y., 211; Bishop Cr. Law, [7th Ed.] sec. 728; Wharton Cr. Law, [9th Ed.] sec. 380.

As to what is necessary to constitute murder in the first degree, the court charged the jury, in the trial of Green, as follows:

2. SAME: Instructions.

"All murder which shall be perpetrated ·by means of poison or by lying in wait or by any other kind of *willful, deliberate, malicious and premeditated* killing * * * shall be deemed murder in the first degree."

"If the jury believe from the evidence beyond a reasonable doubt that the defendant, either by himself or in connection with others, inflicted the wounds or injuries on deceased, Horton, as charged in the indictment, with the intent, *formed* in the mind at the time of the injuries, to take deceased's life, and that such wounds or injuries did cause the death of deceased, they may convict of murder in the first degree."

"An unlawful act, coupled with malice and resulting in death, will not of itself constitute murder in the first degree, but in order to constitute murder in the first degree, the killing must have been *intentional, after* deliberation and premeditation."

In order to constitute a homicide murder in the first degree according to these instructions, the killing must have been willful, deliberate, malicious and premeditated; there must have been an intent to take the life of the deceased in the mind of the slayer at the time the act of killing was done; and the intent must have been formed after deliberation and premeditation. This is, in effect, telling the jury that the intent must have preceded the killing. This is the only construction which can be fairly placed upon these instructions, and, construed in that way, they are correct.

Vol. LI.—13.

3. Same: Evidence.    Appellants insist that the verdicts against them are contrary to law and evidence. The evidence shows that they and others banded together to take Arthur Horton from his room and whip him; that, during the night of the 21st of May, 1888, they entered the room in which he was sleeping, and forcibly took and carried him away for a short distance and whipped and beat him most cruelly. On the next day his dead body was found wrapped in an old quilt, and near it a number of switches, or small sticks, with "frazzled ends." The skull was fractured; there was a severe cut across the face; three of his ribs were broken down; the front of the body was lacerated with switches; and one arm and the collar bone were broken. His death was, doubtless, caused by these wounds. There was evidence to sustain the conclusion of the juries, that they were inflicted by those who had taken him out with the avowed purpose of whipping him. But there was no evidence to show who struck the fatal blow. But this does not relieve appellants of responsibility for the crime thereby committed. Having combined to commit a crime, they are responsible for the crime committed in the prosecution of their common design.

In Wharton's Criminal Law the author says: "All those who assemble themselves together, with an intent to commit a wrongful act, the execution whereof makes probable in the nature of things a crime not specifically designed, but incidental to that which was the object of the confederacy, are responsible for such incidental crime. * * * It is not necessary that the crime should be a part of the original design; it is enough if it be one of the incidental probable consequences of the execution of that design, and should appear at the moment to one of the participants to be expedient for the common purpose. Thus when A and B go out for the

purpose of robbing C, and A, in pursuance of the plan, and in furtherance of the robbery, kills C, B is guilty of the murder. In such cases of confederacy all are responsible for the acts of each, if done in pursuance of, or as incidental to, the common design." 1 Vol., [9th Ed.] sec. 220; *Reg. v. Jackson*, 7 Cox Cr. C., 357.

Mr. Bishop says: "A man may be guilty of a wrong which he did not specifically intend, if it came naturally or even accidentally from some other specific, or general, evil purpose. When, therefore, persons combine to do an unlawful thing, if the act of one, proceeding according to the common plan, terminate in a criminal result, though not the particular result meant, all are liable." 1 Bishop Cr. Law, [7th Ed.] sec. 636.

In 1 Hale's Pleas of the Crown., 441, it is said: "If divers persons come in one company to do an unlawful thing, as to kill, rob, or *beat a man*, or to commit a riot, or do any other trespass, and one of them in doing thereof kill a man, this shall be adjudged murder in them all that are present of the party abetting him and consenting to the act or ready to aid him, although they did but look on."

In *Brennan v. The People*, 15 Ill., 512, a large number of defendants were indicted for the murder of one Story. Instructions were asked which "required the jury to acquit the prisoners, unless they actually participated in the killing of Story, or unless the killing happened in pursuance of a common design, on the part of the prisoners and those doing the act, to take his life." The court said: "Such is not the law. The prisoners may be guilty of murder, although they neither took part in the killing nor assented to any arrangement having for its object the death of Story. It is sufficient that they combine with those committing the deed to do an

unlawful act, such as to *beat*, or rob Story; and that he was killed in the attempt to execute the common purpose. If several persons conspire to do an unlawful act, and death happens in the prosecution of the common object, all are alike guilty of the homicide.''

In *Williams v. State*, 81 Ala., 1, it was held, that ''If five or six men combine together to invade a man's household, and they go there armed with deadly weapons for the purpose of attacking and beating him, and in furtherance of their common design, all of the confederates being present, or near at hand, one of them gets into a difficulty with their common adversary and kills him, all would be guilty of murder, although they did not all entertain a purpose to kill.'' The court said: ''The natural and probable consequences of this [conspiracy] is homicide—either one or more of the assailants or of the party thus assailed—and such homicide, when committed by any one of the conspirators, can be nothing less than murder in all who combine to commit the unlawful act of violence, especially if they were near at hand inciting, procuring, or encouraging the furtherance of the act of assault and battery.''

In *Peden v. State*, 61 Miss., 268, several persons conspired to take one Walker from his house and whip him. They accordingly took him from his bed, and severely beat him, and in executing this design one of the confederates, named Davis, struck him a fatal blow with a spade, from which he died. It was held that they all were equally guilty, whether they intended to kill or not. The court said: ''It is claimed that as the fatal blow was struck by Davis, and the evidence negatives the idea that there was any intent on the part of the accused to kill, he could not be guilty of murder; but on the principle of joint responsibility between the parties

unlawfully engaged, *the guilt of Davis is imputable to the accused*. Whether or not Davis was guilty of murder depends on whether he struck the fatal blow with deliberate design to effect the death of Walker. If he did he was guilty of murder.''

In all these cases the appellants, or a part of them, were convicted of murder in the highest degree and were sentenced to death, and the sentence was affirmed by the appellate court.

In *Carr v. State*, 42 Ark., 206, several persons confederated to arrest one Wyatt, and in the prosecution of this design one of them killed him. The court said in that case: ''The law upon this subject is, that a man may be guilty of a wrong which he did not specifically intend, if it came naturally or even accidentally from some other specific, or general, evil purpose. When, therefore, persons combine to do an unlawful thing, if the act of one, proceeding according to the common plan, terminates in a criminal result, though not the particular result meant, all are liable.''

We think there was evidence to show that the killing in this case was done in the furtherance or prosecution of the common design of appellants and their associates to whip the deceased. It is highly probable that in the execution of their design they were met by resistance on the part of the deceased and in overcoming that resistance the fatal blow was struck. The circumstances accompanying the killing and the nature of the injuries inflicted indicate a purpose to kill. The cruel and brutal treatment the deceased received shows an intention to do something more than to whip. They are presumed to have intended the natural consequences of their acts. There was evidence to sustain the verdicts of the juries in these cases.

**4. Same: Evidence of accomplice.**    But it is contended that one of the principal witnesses in these cases was an accomplice in the killing of Horton, and that appellants could not be lawfully convicted on his testi- mony without corroboration.    The evidence on which this contention is based is the witness' own testimony.    He tes- tified that he did not report what he testified he knew for two days, and that his reason for not doing so was, the ac- cused had threatened to kill him if he did.    The inference is, he remained silent through fear.    If the jury believed what he said to be true, they had the right to receive and act upon it.    For he was not an accomplice if his failure to report was caused by fear, as was held in *Melton v. State*, 43 Ark., 367.

Judgment affirmed.