2009 Ark. App. 622

**Sonya Nate MOONEY, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 08–1207.**

Court of Appeals of Arkansas.

Sept. 30, 2009.

Rehearing Denied Nov. 4, 2009.

Valerie L. Hays, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Kent G. Holt, Ass't Att'y Gen., for appellee.

ROBERT J. GLADWIN, Judge.

Appellant Sonya Nate Mooney was convicted by a Craighead County jury on April 18, 2008, of first-degree murder and was sentenced to 420 months' imprisonment in the Arkansas Department of Correction. She contends on appeal that there was not sufficient evidence to sustain a conviction of first-degree murder, that the trial court erred in allowing testimony of witnesses who had violated Arkansas Rule of Evidence 615 (2008), and that the trial court erred in failing to admonish the jury regarding comments made by defense counsel during closing arguments. We affirm.

Appellant was charged by information filed on April 11, 2006, with the capital murder of Veronica Jenkins on March 22, 2006. A mistrial was declared during the trial held August 6–8, 2007, when jury members were exposed to news reports bearing on crucial elements of the case. However, during the first trial, Kristie Kidd and Patrick Kidd, husband and wife, testified on behalf of the State. Gladys Jenkins did not testify during the first trial, but remained in the courtroom during the trial and was not subject to the Rule.[1]

At the trial held in April 2008, the State's witnesses testified that appellant and Ms. Jenkins had been arguing via the telephone for several days leading up to the incident. Ms. Jenkins believed that appellant was stealing her boyfriend, with whom Ms. Jenkins had children. Ms. Jenkins had been staying several nights with her cousin, Kristie Kidd, because she had been evicted from her apartment in Jonesboro. The testimony was that appellant contacted several people, including Kristie Kidd and a probation officer in Jonesboro, in order to stop the telephone calls from Ms. Jenkins. Appellant testified that Ms. Jenkins had harassed her, threatened to harass her children, and followed her from her home.

On the day in question, appellant agreed to meet Ms. Jenkins at a park near the Kidds' home. As Ms. Jenkins walked out the door, followed by Patrick Kidd, appellant was pulling up to the front of the Kidds' house. Appellant and Ms. Jenkins met on the driveway and an altercation began. A neighbor reported witnessing appellant immediately strike Ms. Jenkins, who fell back. Ms. Jenkins said, "She cut me," when she fell. Appellant offered to

---

1. Arkansas Rule of Evidence 615 (2008), states as follows:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

assist, but was told by the Kidds to leave. Appellant called 911 twice in order to get help to Ms. Jenkins. Appellant claimed that she did not intend to kill Ms. Jenkins, but only wanted to settle the dispute between them.

The defense moved for a directed verdict, arguing that the State failed to meet its burden of proof for capital murder, first-degree murder, second-degree murder, or manslaughter. The trial court denied the motion. The trial court also denied the directed-verdict motion when it was renewed at the end of the defense's case. During closing arguments, after defense counsel outlined in detail his argument for the jury to find appellant not guilty, he made the following statement to the jury:

> You are not fourteen people too stupid to get out of jury duty. You were not the fourteen with back problems. Now, when you look out there-and you-all have been here all week—there's nobody here. You have family, a couple people that work here, people that are lost probably, a lawyer waiting to get the judge to sign an order during one of the breaks, but there's not a big lot of excitement here. Nobody cares. I mean really, nobody cares. That's why you're here. [I mean, we care and I just want to thank you for Sonya.] [2]

Appellant was found guilty of first-degree murder and sentenced to 420 months' imprisonment. This appeal followed.

*Sufficient evidence of intent*

■ Directed-verdict motions are treated as challenges to the sufficiency of the evidence. *Saulsberry v. State*, 81 Ark. App. 419, 102 S.W.3d 907 (2003). The test for determining sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial; substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Smith v. State*, 352 Ark. 92, 98 S.W.3d 433 (2003). Evidence is viewed in the light most favorable to the State; only evidence that supports a verdict is considered. *Clements v. State*, 80 Ark.App. 137, 91 S.W.3d 532 (2002). When we review a challenge to the sufficiency of the evidence, we will affirm the conviction if there is substantial evidence to support it. *Saulsberry, supra.* Decisions regarding the credibility of witnesses are for the trier of fact. *Robinson v. State*, 353 Ark. 372, 108 S.W.3d 622 (2003). The fact finder is not required to believe any witness's testimony, especially the testimony of the accused, because he is the person most interested in the outcome of the trial. *Winbush v. State*, 82 Ark.App. 365, 107 S.W.3d 882 (2003). We do not weigh the evidence presented at trial nor do we weigh the credibility of the witnesses. *Polk v. State*, 82 Ark.App. 210, 105 S.W.3d 797 (2003).

■ Appellant contends that the trial court erred in failing to grant her motion for directed verdict because the State did not prove with sufficient evidence the requisite intent necessary to support a conviction for first– or second–degree murder. First–degree murder requires that the jury find that it was appellant's purpose to cause Ms. Jenkins's death or to purposely engage in conduct to cause such a result. Ark.Code Ann. § 5–10–102 (Repl.2006). "Purposely" is defined as a person's conscious object. Ark.Code Ann. § 5–2–202 (Repl.2006). Second–degree murder re-

---

**2.** The last sentence of the quote was included in the supplemental abstract, but not the abstract supplied by appellant.

quires that the perpetrator cause the death knowingly. Ark.Code Ann. § 5–10–103 (Repl.2006). "Knowingly" is defined as a result of the person's conduct when he is aware that it is practically certain that his conduct will cause the result. Ark. Code Ann. § 5–2–202.

Because there is no direct evidence of appellant's intent, it must be proved by circumstantial evidence that is of sufficient weight so as to exclude every other reasonable hypothesis consistent with innocence. *See Carmichael v. State,* 340 Ark. 598, 12 S.W.3d 225 (2000). Appellant argues that neither the fact that she had a knife in her possession at the time of the altercation, nor the killing itself, infer intent, citing *Palmore v. State,* 29 Ark. 248 (1874). In *Palmore,* our supreme court determined that the jury should hear evidence of defendant's state of mind prior to the victim's death in order to determine defendant's intent.

Appellant argues that she had received threats from Ms. Jenkins. She testified that, during that time, she began carrying a knife or mace. She claims, therefore, that even though she had the knife with her at the time of the altercation, that does not imply intent to injure or kill Ms. Jenkins. Appellant contends that intent may be inferred by all the facts and circumstances surrounding the killing, including the type of weapon used, the manner in which the weapon was used, the nature, extent and location of the wounds, and the conduct of the parties. *See Davis v. State,* 365 Ark. 634, 232 S.W.3d 476 (2006) (sufficient evidence of intent where witnesses saw Davis go to his car, return with a gun, and shoot the victim three times at close range); *Porter v. State,* 358 Ark. 403, 191 S.W.3d 531 (2004) (sufficient evidence of intent where witnesses saw Porter shoot a Walmart employee in the back of the head, step over the victim, laugh, and say,

"Now you know I'm not playing ... that mother f—— hurting now."); *Smith v. State,* 337 Ark. 239, 988 S.W.2d 492 (1999) (sufficient evidence of intent finding where defendant chose to use a sawed-off shotgun rather than a .22–caliber pistol he was carrying, and said, "Do you want me to shoot you too? You want some too?"); *Booker v. State,* 335 Ark. 316, 984 S.W.2d 16 (1998) (sufficient evidence of intent where defendant broke into victim's home, waited until she arrived, raped her, and stabbed her with knife and scissors from the house); *Green v. State,* 51 Ark. 189, 10 S.W. 266 (1889) (sufficient evidence of intent to kill where men took the victim from his hotel room to whip and beat him, resulting in multiple broken bones, severe cuts and lacerations, and a fractured skull).

Appellant claims that the circumstances surrounding the altercation with Ms. Jenkins, and continuing through the time of her arrest, are relevant to the issue of her intent. She claims that evidence that the victim provoked the killer is another circumstance that goes to the question of the killer's intent. *See Simmons v. State,* 227 Ark. 1109, 305 S.W.2d 119 (1957) (where our supreme court held that, in view of evidence of disagreements, threats, and provocation, evidence was insufficient to establish premeditation and deliberation necessary to sustain conviction for first-degree murder but would support conviction for murder in the second degree).

Appellant claims that the evidence was that beginning in October 2005, she was being harassed and stalked by Ms. Jenkins. Ms. Jenkins was angry over a relationship between appellant and the father of Ms. Jenkins's children. Appellant grew cautious of Ms. Jenkins as the calls increased and became more threatening. Appellant began carrying a knife or mace for protection. On March 21, 2006, the day before the incident, appellant called

the parole officer hoping to get Ms. Jenkins to leave her alone. She met with Ms. Jenkins's boyfriend and told him to leave her alone. Ms. Jenkins called appellant around 10:20 p.m. indicating that she wanted to talk and settle things civilly.

The following day, after a morning of being stalked by Ms. Jenkins, the women agreed to meet at the park. Ms. Jenkins and appellant talked on the Kidds' home telephone immediately prior to the incident. The Kidds believed that Ms. Jenkins was going out to meet appellant to fight. When Ms. Jenkins left the house, she was carrying her purse and keys. Mr. Kidd was outside when appellant and Ms. Jenkins met.

Appellant claimed that when the fight began, the knife she had been carrying fell out of her pocket. Appellant claimed that Ms. Jenkins was saying, "Bitch, you on my ground now. You done f'd up I'll shoot you," and Mr. Kidd was encouraging the fight. Appellant |₈claimed she saw a gun in Ms. Jenkins's unzipped purse. Appellant said that she reacted to Ms. Jenkins's advances with stabbing motions, figuring if she tried to get away Mr. Kidd or Ms. Jenkins would just shoot her. When she saw blood on Ms. Jenkins's shirt, Ms. Jenkins fell. Appellant offered help, but was told to leave. Appellant called the 911 operator two times. Ms. Jenkins's purse had been removed from the scene by the time police arrived. Ms. Kidd testified that she moved the purse after police arrived. Appellant turned herself into the police, not knowing that Ms. Jenkins had died.

Based on these facts, appellant claims that she believed she was in danger from Ms. Jenkins. She argues that the reasonableness of her belief must be judged by the circumstances as they appeared to her at the time. *Brockwell v. State*, 260 Ark. 807, 545 S.W.2d 60 (1976). Appellant claims that, even though she had a knife with her, she had no intention of using it to injure, let alone kill, Ms. Jenkins. She argues that the surrounding circumstances compelled her to carry a knife for her protection. She claims that although the circumstances surrounding the altercation between her and Ms. Jenkins may have created a suspicion that she purposely or knowingly killed or intended to injure Ms. Jenkins, they did not compel that conclusion. *See Harris v. State*, 284 Ark. 247, 681 S.W.2d 334 (1984) (where ownership of a van found in a storage unit rented by someone else, which contained drug manufacturing paraphernalia and trace drugs, plus evidence that appellant purchased chemicals, sufficient to create suspicions but not to compel conclusion that owner manufactured drugs). Appellant |₉argues that the State did not present substantial evidence to support its contention that appellant intended, either knowingly or purposely, to kill or injure Ms. Jenkins. She contends that the circumstantial evidence was not sufficient to exclude every other reasonable hypothesis consistent with innocence.

The State contends that the two-inch-deep stab wound that severed an artery in Ms. Jenkins's neck was more than bad luck. The doctor who performed the autopsy testified that there were other knife wounds present on the victim's body that were consistent with contemporaneous defensive wounds. Appellant testified that she had a knife on her person and that she made stabbing motions at the victim, only stopping when she noticed blood on the victim's shirt. Apparently the jury rejected appellant's justification argument.

■ There is no dispute that appellant drove to the address where the victim was staying, confronted her in the driveway of the residence, and, in the ensuing altercation, stabbed her with a knife. A person is

presumed to intend the natural and probable consequences of one's actions. *Leaks v. State*, 345 Ark. 182, 45 S.W.3d 363 (2001). Here, it was readily apparent that there was animosity between appellant and the victim. Further, appellant made the decision to arm herself with a deadly weapon, *i.e.*, a knife, and, in an ensuing altercation, certainly had the purpose to use the knife against the victim. Only one stab, among others, was sufficient to cause the death of the victim and it is also sufficient evidence on which the jury could consider appellant's intent. Thus, we hold that the trial court correctly denied appellant's motion for directed verdict.

### Arkansas Rule of Evidence 615

The Arkansas Supreme Court had the occasion, in *Blaylock v. Strecker*, 291 Ark. 340, 724 S.W.2d 470 (1987), to examine Arkansas Rule of Evidence 615 and to address its operation and application exhaustively. There, the court held that a trial court has very narrow discretion to exclude the testimony of a witness for noncompliance with an exclusion order pursuant to Rule 615. A trial judge can exercise that narrow discretion to exclude a witness's testimony only when the noncompliance is had with the consent, connivance, or procurement of a party or his attorney. *Id.* The violation by a witness of the rule of sequestration through no fault of, or complicity with, the party calling him, should go to the credibility rather than to the competency of the witness. *Id.*

Appellant argues that the trial court erred in allowing Kristie Kidd, Patrick Kidd, and Gladys Jenkins to testify about the contents of Veronica Jenkins's purse on the day of the altercation where there were violations of Arkansas Rule of Evidence 615. Their testimony was related to the issue of appellant's intent, as it directly related to her perception that she

was in danger. This perception of danger was a key element of her defense.

Rule 615 expressly provides that "the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." We have stated that the purpose of Rule 615 is to expose inconsistencies in the testimonies of different witnesses and "to prevent the possibility of one witness's shaping his or her testimony to match that given by other witnesses at trial." *King v. State*, 322 Ark. 51, 55, 907 S.W.2d 127, 129 (1995) (quoting *Fite v. Friends of Mayflower, Inc.*, 13 Ark.App. 213, 682 S.W.2d 457 (1985)).

Appellant argues that there is no dispute that Ms. Jenkins left the house with her purse and placed it on the ground with her keys prior to meeting up with appellant. Appellant testified that she saw the purse, unzipped, on the ground with a gun in it, and believed Ms. Jenkins was going to use that gun on her. The purse then disappeared from the scene. Ms. Kidd testified that she removed the purse after police arrived. The Kidds indicated that the purse was taken into the house to protect a small amount of cash it contained. Kristie Kidd and Gladys Jenkins denied there was any gun in the purse.

Patrick Kidd testified about the purse at the first trial. When the prosecutor wanted to recall Kristie Kidd about the purse, Ms. Kidd admitted to talking to her husband about the purse after he testified. The prosecutor also said he would be calling Gladys Jenkins, Ms. Jenkins's mother, even though she had been in the courtroom throughout the first trial and heard Patrick Kidd testify about the purse. Defense counsel objected to both witnesses pursuant to the Rule. However, a mistrial was declared for other reasons before the trial court ruled on the Rule 615 objection. Appellant contends that Kristie Kidd never testified about the purse until after she

had spoken with her husband in violation of the Rule. She was able to conform her testimony to match her husband's, thereby prejudicing appellant.

Further, Gladys Jenkins was allowed to testify, even though she heard Mr. Kidd's testimony regarding the purse during the first trial. She was then able to conform her testimony to that given by Mr. Kidd. Appellant contends that this compounded the prejudice to her. *See Solomon v. State,* 323 Ark. 178, 913 S.W.2d 288 (1996) (where court remanded for a new trial when the Rule had been invoked, but victim's three daughters were allowed to remain in the courtroom, giving them the opportunity to shape their testimonies to match other witnesses). Because the jury had to base its judgment regarding appellant's intent on conflicting testimony, she asks for a new trial.

Our supreme court analyzed an issue under Rule 615 in *Swanigan v. State,* 316 Ark. 16, 20, 870 S.W.2d 712, 714 (1994):

> In the *Blaylock* opinion, we cited *Norris v. State,* 259 Ark. 755, 536 S.W.2d 298 (1976), and *Williams v. State,* 258 Ark. 207, 523 S.W.2d 377 (1975), for the controlling rationale regarding the rarely exercised discretion to exclude testimony for noncompliance with Rule 615. We stated that, with the offending witness subject to punishment for contempt and the adverse party free to raise the issue of credibility in argument to the jury, the party who is innocent of the rule's violation should not ordinarily be deprived of the testimony.
> 
> The standard of narrow discretion, we noted in *Blaylock v. Strecker,* "remains as it has been for many years." 291 Ark. at 345, 724 S.W.2d at 473. We have not changed our stance in subsequent decisions, nor do we see any reason to change it now. *See Porter v. State,* 308 Ark. 137, 823 S.W.2d 846

(1992); *Ford v. State,* 296 Ark. 8, 753 S.W.2d 258 (1988); *Daniels v. State,* 293 Ark. 422, 739 S.W.2d 135 (1987).

There are three possible methods of enforcement of an exclusion order that are available to a trial judge: (1) citing the witness for contempt; (2) permitting comment on the witness's noncompliance in order to reflect on his credibility; and (3) refusing to let the witness testify. *Blaylock v. Strecker, supra.*

The State contends that the trial court chose a viable option that was cited in defense counsel's brief on the issue. The State claims that this is at least a tacit admission that such a remedy was proper. Further, the trial court's explanation encompasses the fact that, while Kristie Kidd had talked to her husband, Patrick Kidd, about the purse, he had already testified in the prior trial. In the retrial, appellant also had the advantage of cross-examining both the Kidds regarding the location of the purse as well as any discussion they may have had regarding the purse. Therefore, defense counsel was given wider latitude to make a point regarding the gun. We hold that the trial court did not abuse its discretion in choosing a proper alternative as set forth in our case law above.

The State claims that defense counsel did not try to exclude Gladys Jenkins from testifying at the retrial. Defense counsel did not object to her testimony and did not cross-examine her with regard to any conversations she may have had with other witnesses. A party is bound by the scope and nature of his objection, and he cannot change the grounds on appeal. *See Tester v. State,* 342 Ark. 549, 30 S.W.3d 99 (2000). Accordingly, we affirm the trial court as to both of appellant's objections under Rule 615.

*Failure to admonish the jury*

We will not reverse the action of a trial court in matters pertaining to its control, supervision, and determination of the propriety of arguments of counsel in the absence of manifest abuse of discretion. *Cook v. State,* 316 Ark. 384, 872 S.W.2d 72 (1994). Generally, such an error may be cured by a remedial instruction from the court. *Id.* Closing remarks that require reversal are rare and require an appeal to the jurors' passions. *Lee v. State,* 326 Ark. 529, 932 S.W.2d 756 (1996). Furthermore, the trial court is in the best position to evaluate the potential for prejudice based on the prosecutor's remarks. *Bullock v. State,* 317 Ark. 204, 876 S.W.2d 579 (1994).

> We have stated many times that the trial court is given broad discretion to control counsel in closing arguments, and we do not interfere with that discretion absent a manifest abuse of discretion. *See, e.g., Tryon* [*v. State,* 371 Ark. 25, 263 S.W.3d 475 (2007)]; *Leaks v. State,* 339 Ark. 348, 5 S.W.3d 448 (1999); *Lee v. State,* 326 Ark. 529, 932 S.W.2d 756 (1996). "Although it is not good practice for counsel to inject their personal beliefs into the closing arguments, mere expressions of opinion by counsel in closing argument are not reversible error so long as they do not purposely arouse passion and prejudice." *Neff v. State,* 287 Ark. 88, 94, 696 S.W.2d 736, 740 (1985). Furthermore, the trial court is in the best position to evaluate the potential for prejudice based on the prosecutor's remarks. *Tryon, supra; Leaks, supra.*

*Jefferson v. State,* 372 Ark. 307, 321, 276 S.W.3d 214, 225 (2008).

Appellant contends that the trial court erred in failing to admonish the jury regarding comments made during closing arguments, which prejudiced her. Appellant argues that defense counsel's comments during closing arguments implying that nobody cares was objectionable. However, no one was there to object on behalf of appellant. She claims that the prosecutor capitalized on defense counsel's comments, reiterating that it was up to the jury to prove that someone cared. The combination of improper statements from both sides, without any intervention from the trial court to minimize the impact on the jury, resulted in a severe prejudice to appellant. She claims the inappropriate remarks were likely to inflame the jury's passions thereby prejudicing them against the party that implied that they were too stupid to get out of jury duty. As a result, she argues that the case should be remanded for a new trial.

The State contends that the issue appellant complains of was not preserved for appellate review because it involves the actions of her defense counsel. Alternatively, she blames the trial court for failing to act on its own motion. It is clear that in the absence of an objection, an argument is not preserved for review. *See Wicks v. State,* 270 Ark. 781, 606 S.W.2d 366 (1980). The trial court may have a duty to intervene only where the error is so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to intervene. *Id.* Here, the argument may have been improvident, but not the sort to require the trial court to intervene. Accordingly, we affirm.

Affirmed.

GLOVER and HENRY, JJ., agree.