

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-16-778

TYRUN LAMONT JONES

APPELLANT

V.

STATE OF ARKANSAS

APPELLEE

Opinion Delivered: May 10, 2017

APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTH DIVISION
[NO. 60CR-15-469]

HONORABLE HERBERT T. WRIGHT, JUDGE

AFFIRMED

## RAYMOND R. ABRAMSON, Judge

A Pulaski County jury convicted Tyrun Lamont Jones of second-degree murder.[1] The jury sentenced him to 300 months' imprisonment with a firearm enhancement of 180 months. On appeal, he argues that his conviction should be overturned because the circuit court abused its discretion in excluding a witness pursuant to Arkansas Rule of Evidence 615. He also argues that the case should be remanded for resentencing because the prosecutor made improper statements during closing remarks at the sentencing stage of trial. We affirm.

On February 13, 2015, the State charged Jones with first-degree murder of Alex Booker. The case proceeded to trial on May 3, 2016. On the first day of trial, Brianna Jordan

---

[1]The jury also convicted Jones of possession of a firearm by certain persons, but that conviction is not at issue on appeal.

testified that she lived in an apartment with Anita Henderson and that she had a sexual relationship with both Jones and Booker. She further testified that on December 24, 2014, she was at her apartment with Jones and Henderson and that Jones texted Booker on her phone to come to the apartment. She explained that Booker later came to the apartment, that Booker and Jones had a disagreement, and that Jones shot Booker with a gun. Jordan could not recall how many times Jones fired the gun or where Booker had been shot. She stated that immediately after Jones fired the gun, she, Booker, and Henderson fled the apartment.

On the second day of trial, Henderson testified that she saw Jones shoot Booker four times in his back with a gun in her apartment. She also testified that she and Booker fled the apartment after the shooting. On cross-examination, defense counsel asked Henderson whether, following Booker's death, she had spoken with Jones in prison while she was visiting her brother. Henderson denied it. Defense counsel then asked Henderson whether she had told Jones that Jordan killed Booker, and Henderson further denied speaking to Jones.

Following Henderson's testimony, defense counsel informed the court that it wanted to call Georgette Giles, who was not on the witness list and who had been present in the courtroom that day, to impeach Henderson's testimony. Defense counsel explained that Giles had discussed with him certain information that could be used for impeachment purposes "after the close of business yesterday" and that he did not notify the State about Giles's testimony because he believed Henderson would tell the truth on the stand. Defense counsel proffered Giles's testimony that about two months prior to the trial, while she was

visiting Jones in prison, she heard Henderson tell Jones, "[L]et's put it all on [Jordan.]" Giles stated that she did not attend the first day of trial but that she was in the courtroom for the entirety of Henderson's testimony on the second day.

The State objected to Giles's testimony, asserting that it violated Arkansas Rule of Evidence 615 because the rule had been invoked and Giles had been in the courtroom during Henderson's testimony. The court found that

> the problem the Court sees in this case in addition to the inconsistencies in her testimony, is the fact that she reported this last night. That's before today. Defense counsel let this witness be called this morning and testify in this witness's presence to something he knew she was [going to] refute . . . Defense counsel knew . . . that this witness, this witness right here, that she was going to refute the testimony of Anita Henderson or might refute it depending on what Miss Henderson said. Yet you allowed the State to call that witness without bringing to the attention of the Court that a found contrary witness was in the Court Room . . . the Court's striking the witness from the list.

Jones later testified on his own behalf. He stated that Jordan shot Booker in Henderson and Jordan's apartment and that Henderson was not present during the shooting. He explained that after he saw Jordan shoot Booker, he immediately fled the apartment. He admitted that he initially told police that a man named Quincy shot Booker.

The jury convicted Jones of second-degree murder and found that he had used a firearm in committing the felony. The case then proceeded to the sentencing phase, and the prosecutor stated the following during closing remarks:

> And you get to hear the emotional impact that [Henderson]'s out in the hall suicidal. And [Henderson] is a nice person. She's a good person. If she had ever been in trouble before, you would have heard it. She has. She's got emotional problems for seeing the violence that she has, that she had seen. And who started that? This man. So, [Henderson] had the same, the same opportunities as he did, yet he has people that he could go to for help. Who does [Henderson] have to go to for help, her psychiatrist.

 

The State further told the jury that

> [there are] two courts involved. There's the one court where you'll be judged at the end, but there's another court right here right now to take care of society.

The jury later sentenced Jones to 300 months' imprisonment for second-degree murder with a 180-month firearm enhancement. Jones timely appealed his conviction to this court.[2]

On appeal, Jones first argues that his convictions should be overturned because the circuit court abused its discretion in excluding Giles's testimony pursuant to Arkansas Rule of Evidence 615. Rule 615 provides that "at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." The purpose of Rule 615 is to expose inconsistencies in the testimony of different witnesses and to prevent the possibility of one witness's shaping her testimony to match that given by other witnesses at trial. *Lard v. State*, 2014 Ark. 1, 431 S.W.3d 249 (citing *Adams v. State*, 2013 Ark. 174, 427 S.W.3d 63).

"There are three possible methods of enforcement of an exclusion order that are available to a trial judge: (1) citing the witness for contempt; (2) permitting comment on the witness's noncompliance in order to reflect on her credibility; and (3) refusing to let the witness testify." *Mooney v. State*, 2009 Ark. App. 622, at 13, 331 S.W.3d 588, 595 (citing *Baylock v. Strecker*, 291 Ark. 340, 724 S.W.2d 470 (1987)). "A trial judge can exercise narrow discretion to exclude a witness's testimony only when the noncompliance is had with the consent, connivance, or procurement of a party or his attorney" but that discretion should be "rarely exercised." *Id.* at 10, 12, 331 S.W.3d at 594, 595. The violation by a witness of

---

[2]Jones filed a pro se notice of appeal, and his attorney also filed a notice of appeal.

the rule of sequestration through no fault of, or complicity with, the party calling him, should go to the credibility rather than to the competency of the witness. *Id*. Our supreme court has consistently held that it will not reverse the circuit court's decision regarding this issue absent a showing of prejudice. *Adams*, 2013 Ark. 174, 427 S.W.3d 63. Further, our supreme court has held that an appellant failed to establish prejudice based on the exclusion of testimony when the testimony was essentially inconsequential. *Daniels v. State*, 293 Ark. 422, 739 S.W.2d 135 (1987).

In this case, we hold that Jones cannot show prejudice as result of the court excluding Giles's testimony. Giles's testimony would have attacked Henderson's credibility only on whether she spoke with Jones in prison about implicating Jordan for Booker's death. Nonetheless, at trial, both Jordan and Henderson testified that Jones shot Booker in their apartment. Furthermore, defense counsel asked Henderson at trial whether she and Jones discussed implicating Jordan for Booker's death, and Henderson denied it. Given this evidence, we cannot say that Jones has demonstrated reversible error.

Jones also argues that this case should be remanded for resentencing because the prosecutor made improper statements regarding Henderson and "a higher court" during closing remarks at the sentencing stage. He asserts that the comments are fundamentally unfair and violated his due-process rights. He concedes that he did not object to the statements at trial and thus the issue is not normally preserved for our review, but he argues that this court should consider the issue pursuant to the third *Wicks* exception.

The third *Wicks* exception to the contemporaneous-objection rule applies when the error is so flagrant and so highly prejudicial in character as to make it the duty of the court

on its own motion to instruct the jury correctly. *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). Our supreme court has allowed issues to be considered under the third exception when the error affects the very structure of the criminal trial. *Anderson v. State*, 353 Ark. 384, 108 S.W.3d 592 (2003). Our caselaw is clear that *Wicks* presents only narrow exceptions that are to be rarely applied. *Chunestudy v. State*, 2012 Ark. 222, 408 S.W.3d 55 (citing *Anderson*, 353 Ark. 384, 108 S.W.3d 592). Specifically, the third exception has been applied very rarely to cases including the right to a twelve-person jury, violations of Arkansas Code Annotated section 16-89-125(e) (Repl. 2005), and statements by a prosecutor in voir dire that have the effect of shifting the burden of proof. *Id*. (citing *Ayala v. State*, 365 Ark. 192, 226 S.W.3d 766 (2006); *Anderson*, 353 Ark. 384, 108 S.W.3d 592; *Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997); *Grinning v. City of Pine Bluff*, 322 Ark. 45, 907 S.W.2d 690 (1995)).

On the other hand, our supreme court has refused to apply the exception where a prosecutor was erroneously allowed to make statements during closing arguments that violated a defendant's right to remain silent. *Chunestudy*, 2012 Ark. 222, 408 S.W.3d 55. In this case, we hold that the prosecutor's statements are more similar to those statements in *Chunestudy* and are not errors that fall into the third *Wicks* exception. Accordingly, we decline to address Jones's argument concerning the statements.

Affirmed.

HIXSON and MURPHY, JJ., agree.

*Robert M. "Robby" Golden*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.